IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VICKEY D. DAVIDSON,

                      Plaintiff,

   v.

STATE COLLECTION SERVICE, INC.,

                      Defendant.

OPINION and ORDER

18-cv-1064-jdp

---

Plaintiff Vickey D. Davidson, appearing pro se, is a former employee of defendant State Collection Service, Inc. Davidson alleges that the company discriminated against her because of her race and her disability when she was terminated from the company after she missed work because of a back injury. She also alleges that she faced a hostile work environment because of racially insensitive comments made by a coworker. She brings claims under the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964.

State Collection Service has filed a motion for summary judgment, Dkt. 20, which I will grant. The undisputed facts show that Davidson was physically unable to work for several months around the time of her termination, which makes her ineligible to recover on an ADA claim. Davidson also fails to show that she was subjected to a hostile work environment or that her race had anything to do with her termination. The entire case will be dismissed.

UNDISPUTED FACTS

I begin with an explanation of the evidence that I will consider. As a general principle, a fact is not genuinely disputed unless the party raising a dispute has admissible evidence to support her version. In Davidson's proposed findings of fact and responses to State Collection

Service's proposed findings, she discusses her recollection of various events, but she does not support her statements with a sworn affidavit or declaration. Because Davidson is proceeding pro se, I'll consider most of her unsworn statements as though she had submitted them in an admissible declaration. But I won't consider new statements she's made that explicitly contradict her previously given deposition testimony. *See, e.g.*, *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) ("sham-affidavit rule" is applied "to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised").

With that explanation, the following facts are undisputed unless otherwise noted.

Davidson began work at State Collection Service in November 2014. Davidson is black.

In late 2014, a coworker named Laura Thurow called Davidson stupid. Davidson told her supervisor but not human resources about this remark. Sometime in 2015, Thurow told Davidson that Thurow's boyfriend was a member of the Hells Angels and did not like black people. In her deposition, Davidson said that she did not report this statement to her supervisor or human resources. *See* Dkt. 25, at 28. In her response to State Collection Service's proposed findings of fact, Davidson says that she did report the remark later, in 2016. I'll consider this statement because it doesn't clearly directly contradict her earlier deposition testimony.

Around October 2016, Thurow asked Davidson whether Davidson was wearing a wig. Davidson asked why. Thurow said that when black people have long hair in a different color, it is not their real hair. Davidson reported that discussion to her supervisor but not human resources. I take the parties to be saying that Thurow was herself a supervisor at that point.

In November 2016, Davidson needed back surgery. During the summer, Davidson had already used her 12 weeks of leave for the year under the Family Medical Leave Act. November

2

5 was the last day Davidson worked at State Collection Service. Davidson showed Thurow a doctor's note requesting that Davidson be allowed to miss work for a month.

On November 8, Davidson spoke with Gillian Ulrich from State Collection Service's human resources department by telephone. Davidson stated that she needed back surgery within the next few days, and that her doctor estimated that she would need four weeks to recover from the surgery. Ulrich told Davidson that State Collection Service would not provide Davidson with additional leave, and that Davidson could resign and then reapply for a job when she was able to return to work. Davidson said that she would speak with her doctor to see if she could have her surgery rescheduled for 2017.

Davidson was scheduled to work on November 9 and November 10, 2016. She did not call in to say she was not coming those two days, although the parties dispute whether Davidson had been excused from calling in.

On November 10, 2016, Ulrich left Davidson a voicemail, stating that State Collection Service accepted her resignation under a company policy stating that failure to report for two consecutive workdays without calling in would be regarded as a "voluntary termination."

The next day, Davidson left Ulrich a message stating that she wanted to continue working at State Collection Service and that she would see if she could get the back surgery rescheduled for 2017.

On November 15, 2016, Davidson's doctor faxed a note stating that Davidson "will undergo surgery for L5-S1 laminectomy and discectomy" and that her "return to work status will be updated accordingly at first post op appointment to be determined." Dkt. 25-6.

Following her back surgery, Davidson was physically unable to work until July 2017, when she took a job with another company.

ANALYSIS

Davidson alleges that she was harassed because of her race and ultimately fired because of her race and disability. I granted Davidson leave to proceed with claims under the Americans with Disabilities Act and Title VII of the Civil Rights Act.

**A. Americans with Disabilities Act**

The Americans with Disabilities Act (ADA) prohibits employers from discriminating against employees on the basis of disability, 42 U.S.C. § 12112(a). To prevail on an ADA claim, a plaintiff must prove three elements: (1) she is disabled; (2) she is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013).

State Collection Service contends that Davidson wasn't a "qualified individual" under the act because she faced a several-month recovery period, rendering her unable to work, and she was already out of FMLA leave time to cover her recovery period. A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). State Collection Service relies on a recent case from the United States Court of Appeals for the Seventh Circuit, *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476 (7th Cir. 2017), in which the court stated that an employer does not have to grant a long-term leave of absence to an employee as a reasonable accommodation for a disability, and that the "'inability to work for a multi-month period removes a person from the class protected by the ADA.'" *Id.* at 479, 481 (quoting *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)).

In *Severson* the employee sought a two- or three-month leave of absence. *Id.* at 479–80. Davidson was waylaid far longer than that: at her deposition, she admitted that following her November 2016 surgery, she was not able to start working again until July 2017.[1] And Davidson was out of FMLA leave, so she couldn't apply that toward any absence.

Davidson argues that at the time of her termination, neither she nor her doctor had specifically asked State Collection Service for such a long period of leave; all the company knew before it considered Davidson to have resigned was that she sought a one-month period of leave. A one-month period is shorter than the periods at issue in cases like *Severson* or *Byrne*. But the second element of an ADA claim is whether the plaintiff was able to perform the duties of the job—the information relayed to the employer or the employer's actual knowledge is not the relevant issue. Davidson wasn't a qualified individual under the ADA because it's undisputed that she was in fact unable to work for far longer than one month. I will grant summary judgment to State Collection Service on Davidson's ADA claim.

**B.  Title VII**

Davidson brings claims under Title VII of the Civil Rights Act for discrimination and hostile work environment based on her race or color. Title VII makes it unlawful for an employer to fire someone because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It also prohibits employers from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

---

[1] At her deposition, Davidson stated that she didn't feel physically able to work until even later—December 2017, but she said that she took a job in July 2017 because she had no choice. *See* Dkt. 25, at 20–24. I'll credit Davidson with July 2017 as the earliest that she could have performed her job at State Collection Service.

### 1. Hostile work environment

State Collection Service contends that Davidson's hostile work environment claim fails as a matter of law because she was not subjected to severe and pervasive racial harassment and she reported only one incident of harassment.

To prevail on such a claim, a plaintiff must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe or pervasive enough to alter the conditions of her employment; and (4) there is basis for employer liability. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* at 834 (emphasis in original). Courts examine "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017).

The parties dispute how many harassing statements were made to Davidson over the course of her employment. In her deposition, Davidson discusses three statements, all from Linda Thurow: (1) a 2014 statement that Davidson was stupid; (2) a 2015 statement that Thurow's boyfriend did not like black people; and (3) a 2016 conversation about black people's hair. State Collection Service argues that Davidson did not properly report the comments to supervisors or human resources; Davidson counters that she reported them later, in 2016, although it's unclear whether she reported them to supervisors, human resources, or both.

I'll credit Davidson's statement that she eventually reported the statements. Even so, Davidson falls far short of showing that she faced severe or pervasive discrimination. A jury

could conclude that Thurow's statements reflected hostility, but Davidson is still left with at most three statements over a multi-year period. And there's no evidence that Thurow's 2014 remark calling Davidson stupid had anything to do wither her race. "[O]ffhand comments, and isolated incidents (unless extremely serious)" are not sufficient to support a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted); *see also Dey v. Colt Constr. & Develop. Co.*, 28 F.3d 1446, 1456 (7th Cir. 1994) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.").

Davidson argues that the harassment was much more pervasive than that, stating in a proposed finding of fact:

> I was being harassed at work every single day that I showed up for work I would get called to the desk and be made to stand there until Ms. Thurow decided that she wanted to talk to me. She would repeatedly call me to her desk knowing I could not walk and was in severe pain. Ms. Thurow would say negative and abusive things to me and was harassing me daily to the point where it was just stressful to go to work.

Dkt. 30, at 1, ¶ 5. But the statements in this proposed finding are very vague, and Davidson doesn't explain whether this harassment had anything to do with her race. The proposed finding also contradicts what she said at her deposition:

> Q: Okay. So we've talked about the stupid. We've talked about the Hells Angel comment, and we've talked about the wig comment. Is there anything else in terms of what you contend are inappropriate statements that Laura Thurow ever made to you while you were at State Collection?
>
> A: Those are the ones that I can recall.
>
> Q: So at this point, there's nothing else in terms of what you consider to be inappropriate that Laura Thurow said to you; correct?

7

> A: Not at this time.
>
> . . . .
>
> Q: Okay. And everything we've talked about Laura Thurow, is there anything else specifically that you think she did that was inappropriate other than what we've talked about so far?
>
> A: Not that I can recall at this time, no.

Dkt. 25, at 31, 48.

The sham-affidavit rule often will not apply to cases in which a party fails to remember details of events at a deposition and then later remembers them for an affidavit or declaration. But I conclude that the rule should apply here, because it's not plausible that someone would forget pervasive, everyday harassment by a coworker, particularly given that it is the cornerstone of Davidson's hostile work environment claim, and she doesn't explain how her recollection was refreshed. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) ("'deponent remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed'"; *Makeda-Phillips v. White*, 2015 WL 3464313, at *5 (C.D. Ill. May 29, 2015) ("Plaintiff offers no reason why she could not remember any details about her claims at her deposition but could remember specifics about her claims a few months later in a Declaration."). I won't consider Davidson's proposed finding with vague allegations of harassment. So Davidson has evidence to support only three of statements by Thurow, which is not enough to support a hostile work environment claim.

Davidson also argues that she should prevail on this claim because State Collection Service has a "zero tolerance" anti-harassment policy. But Davidson's claim is about her rights

under Title VII, not whether Thurow violated State Collection Service's anti-harassment policy. Therefore, I will grant summary judgment to State Collection Service on Davidson's hostile work environment claim.

   2. **Termination**

I also granted Davidson leave to proceed on a claim that she was terminated because of her race. The parties do not address this claim in their briefing, instead discussing the termination in conjunction with the ADA claim. That is perhaps understandable because the contested issues surrounding Davidson's termination are about her impending surgery, her ability to work, and her desire for an extended leave of absence. Nothing in the parties' briefs, proposed findings of fact, or underlying evidence, including Davidson's deposition, suggests that race had anything to do with her termination. Nor does Davidson establish that human resources staffer Ulrich even knew about Thurow's harassing remarks. So I will grant summary judgment to State Collection Service on this claim.

State Collection Service has also filed a motion to stay the remainder of the schedule in light of the COVID-19 pandemic. Dkt. 38. I will deny that motion as moot because I am denying all of Davidson's claims.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment, Dkt. 20, is GRANTED.

2. Defendant's motion to stay the schedule, Dkt. 38, is DENIED as moot.

3. The clerk of court is directed to enter judgment for defendant and close the case.

Entered April 8, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge